## Hunt v. Garvin, et al.

(Decided January 21, 1921.)

### Appeal from Warren Circuit Court.

1. Pleading—Inconsistent Pleas—Waiver.—Inconsistent pleas or statements must be taken advantage of by motion to elect (sec. 113, subsec. 4, Civil Code) and the adverse party waives objection thereto by responding to both pleas or statements without motion to elect. (Secs. 85 and 86, Civil Code.)

2. Mines and Minerals—Lease—Contracts.—To complete a well as contemplated in a lease to drill for oil or gas within a fixed time means to drill a well within the time through the overlying strata and into the oil or gas bearing formations unless oil or gas in paying quantities is sooner encountered.

3. Mines and Minerals—Abandonment.—Where drilling on a well is abandoned before the shale which overlies the oil bearing sands, is penetrated and without finding oil or gas in paying quantities the well is not completed as contemplated by the lease.

4. Mines and Minerals—Abandonment—Forfeiture.—Where the lease provided for forfeiture if a well was not completed or stipulated rentals 'paid within a fixed time, and the lessee began but did not complete a well or pay the rentals within the time, he abandoned and forfeited the lease, and the court did not err in declaring same void in an action instituted thereafter for that purpose by the lessors.

T. W. & R. C. P. THOMAS and J. FRANKLIN CORN for appellant.

GAINES & GARDNER for appellees.

Opinion of the Court by Judge Clarke—Affirming.

On June 5, 1918, the appellees, Virgil Garvin and his wife, leased to appellant 200 acres of land for a term of five years, for the purpose of drilling and operating for oil and gas thereon. It was stipulated in the lease that if the lessee failed to begin a well on the premises within one year or to complete same within eighteen months from the date of the lease it was to become null and void,

but that a forfeiture could be prevented by the lessee paying to the lessor one dollar per acre per year in advance for each year the completion of a well was delayed; and that the completion of a well within the time agreed upon should operate as a full liquidation of all rentals during the remainder of the term of the lease.

On January 20, 1920, the lessors instituted this action against the lessee to have the lease declared "abandoned, forfeited and void" and to enjoin the lessee from claiming any further rights thereunder.

It was alleged in the petition that lessee had begun a well within a year and completed it more than six months before the filing of the petition, but that neither oil nor gas was found in paying quantities; that thereupon the lessee "removed the drilling machine and abandoned this lease and made no further effort either to drill or pay any rental."

By answer filed February 21, 1920, lessee traversed the allegations of the petition except the averments that he had begun and completed a well on the land. In a separate paragraph he alleged that he had begun and completed a well on the land ,within the agreed time at great expense; that such completion of the well relieved him of any obligation to pay rentals, and that he "intends in good faith to further develop said property for oil and gas within a reasonable time, considering the location of said leased premises and the condition of oil development in said territory and within the five year term provided by said lease."

On March 12, 1920, plaintiffs filed a pleading styled a reply in which they denied that lessee had begun a well within a year or completed same within eighteen months, alleging that they had learned since filing their petition that the well was never completed within the meaning of the lease; that the completion of a well as contemplated by the lease and understood by the parties meant a drilling below the shale and into the oil bearing sands thereunder; that drilling was abandoned before reaching the shale or oil bearing sands. This pleading was traversed of record by consent. On or about May 15, 1920, $200.00 was tendered as rentals by defendant to plaintiffs, and by them refused. Proof was taken on the issues thus formed, and on June 8, 1920, upon submission a judgment was rendered declaring the lease had been abandoned and was null and void. The lessee appeals.

It is first urged that the action is for an abandonment only and not for a forfeiture since the petition alleges that a well was begun and completed according to the terms of the lease, which was as therein provided a full liquidation of all rentals for the entire term; that having pleaded abandonment in the petition, a forfeiture could not be pleaded by reply upon inconsistent averments.

Even if the pleas were inconsistent, which we do not hold, and although the allegations of the two pleadings are inconsistent, having responded to the reply without moving for an election as provided by section 113, subsec. 4, of the Code, appellant waived the question. Civil Code, sections 85 and 86; L. & N. R. R. Co. v. Kimbrough, 115 Ky. 512.

Much of briefs of counsel is devoted to an interesting discussion of the technical differences between a forfeiture and an abandonment, and what constitutes an abandonment of such a lease as this after a dry well has been drilled, but in our view of the evidence we need not consider those questions.

The witnesses agree that the lessee drilled only 350 feet and then voluntarily abandoned drilling at that place, moving his machinery off of the premises, and there is no evidence that he intended to drill that well or hole any deeper; upon the other hand he contends it is a completed well. He did not pay or offer to pay rentals until May 15, 1920, or some months after they were due, if due at all; hence there was a forfeiture and the lease became null and void by its very terms unless the 350 feet hole drilled was a completed well.

Upon this question H. E. Cowling, who qualified as an expert, testified that a completed well is one that is drilled down into what is known as the pay sand; that before reaching such sand in Warren county you must go through the limestones and shales and usually what is called the cap rock; that a well is not completed until drilled through these formations and into the sands thereunder unless oil in paying quantities is sooner encountered and not then unless both parties are satisfied.

Mr. Linderman, who was employed by the lessee to drill the well, testified that he contracted to drill only 350 feet and that when he reached that depth he quit because when he saw what the conditions were he did not think there was much chance of getting oil by drilling deeper.

Mr. Bradberry, the subcontractor, who actually did the drilling, testified that he only contracted to drill 350 feet and this he did but he did not go down to shale.

Virgil Garvin testified about when the machinery was removed, etc., and was asked, "Did they drill down to shale?" and answered, "They say they did—I don't know much about it." Robert Garvin gave about the same answer to the same question.

This is all of the testimony on this question, and we have the uncontradicted evidence of the only witness who testified about the matter, that a well is not completed until it goes through the shale into the sand beneath, the positive statement of the man who did the drilling that he did not go down to shale, with nothing to the contrary whatever, except the statements of Virgil Garvin and his son Robert that "They say they did" go down to shale, which is of course no evidence at all.

We are therefore of the opinion that the lessee abandoned the well before completion without intention to complete it and that when he did so and did not pay the rentals when due he demonstrated his intention to abandon and forfeit the lease, and that plaintiffs have proven both an abandonment and a forfeiture.

It is also suggested by counsel for appellant that a forfeiture was prevented by the tender of rentals on May 15, 1920, some months, but less than a year, after they were due by reason of the provisions of section 3 of chapter 24 of the 1920 Session Acts of the legislature, "That the drilling of one non-productive well shall be sufficient consideration for the discharge of rentals of holders of said contract and lease for a period of twelve months after its completion, etc." But this provision does not apply because appellant did not bring himself within its terms by completing any kind of a well, and also because this act did not become effective until after the pre-existing lease by its terms had become forfeited and of no effect.

Wherefore the judgment is affirmed.